UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

No. 1:23-cr-38-TNM

TODD TILLEY

## STATEMENT OF OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Todd Tilley, with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

2. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in the United States Capitol to certify the vote count of the Electoral

Statement of Offense—Page 1

College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6. At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $1.4 million dollars for repairs.

7.     Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *Todd Tilley's Participation in the January 6, 2021, Capitol Riot*

8.     The defendant, Todd Tilley, travelled from his home in South Paris, Maine, to Washington, D.C., via automobile on January 5, 2021. One of the purposes of the defendant's trip to Washington, D.C., was to protest Congress' certification of the Electoral College.

9.     On January 6, 2021, Tilley watched speeches at the rally near the ellipse and then marched with others to the U.S. Capitol building.

10.    Prior to entering the U.S. Capitol, Tilley observed other rioters attempting to scale walls to gain entrance to the building and assisted one rioter by pulling him safely over the top of one of the walls. Tilley also observed other rioters battling with law enforcement who were trying to keep the crowd from reaching the building. Tilley saw smoke, smelled pepper spray, and heard sirens and loudspeakers warning him that he was in a restricted area.

11. At approximately 2:24 p.m., Tilley entered the U.S. Capitol Building through the Senate Wing doors. Tilley walked with a crowd of other individuals through the Crypt, Statuary Hall, and other areas of the Capitol. On at least one occasion, Tilley joined with other rioters in loudly chanting, "Stop the steal. Stop the steal."

12. Tilley exited the Capitol at approximately 2:53 p.m., nearly 30 minutes after he had entered.

13. Later that evening, Tilley sent a picture he took of a crowd near the Washington Monument to a relative by text message. The relative replied, asking, "Are you there?" Tilley responded by texting, "Yes. Pence screwed us over."

14. The defendant engaged in parading, demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). Specifically, the defendant knew at the time he entered the U.S. Capitol Building that that he did not have permission to enter the building and the defendant paraded, demonstrated, or picketed.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: /s/ Douglas Brasher

DOUGLAS B. BRASHER
Texas State Bar No. 24077601
Assistant United States Attorney (Detailed)
1100 Commerce Street, Third Floor
Dallas, TX 75242
(214) 659-8604
douglas.brasher@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Todd Tilley have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 2/1/2023

TODD TILLEY
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 2/1/2023

ROBERT LEVINE
Attorney for Defendant